K. ALEXANDRA McCLURE SBN 189679
Law Offices of Alexandra McClure
217 Leidesdorff Street
San Francisco, CA 94111
(415) 814-3397
alex@alexmcclurelaw.com

Attorney for VADIM KAZAKEVICH

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>VADIM KAZAKEVICH,<br><br>  Defendant. | Case No. 3-25-mj-71125 MAG<br><br>**VADIM KAZAKEVICH'S <u>CORRECTED</u> OPPOSITION TO UNITED STATES' MOTION TO EXNTEND STAY OF MAGISTRATE RELEASE ORDER; OPPOSITION TO MOTION REVOKE THE RELEASE ORDER OF THE MAGISTRATE**<br><br>DUTY UNITED STATES DISTRICT COURT JUDGE TRINA THOMPSON<br><br>Date:  September 29, 2025<br>Time:  10:00 a.m. |

## INTRODUCTION

Vadim Kazakevich was ordered released Thursday, September 25, 2025, on a $15,000 bond signed by his brother and surety Alex Kazakevich. Magistrate Judge Spero stated on the record at the outset of the hearing that he had reviewed the United States' lengthy written Detention Memorandum (filed on the evening of September 24, 2025, Dkt. 16). Government

1

counsel, Assistant United States Attorney Eli Cohen argued against the recommendation for release by the United States Pretrial Services Office and asked that Mr. Kazakevich be ordered detained. Although the government moved for detention on both grounds, flight risk and danger to the community, the government offered little to no support for its argument that Mr. Kazakevich was at risk of nonappearance such that the government could meet the standard of "serious risk of flight." Instead, the government focused its arguments on danger to the community. Defense counsel urged the court to adopt the recommendation, including all standard release conditions and nine additional "special conditions" recommended by the United States Pretrial Services Office. Among those conditions were requirements of Pretrial Services supervision, attending drug counseling and treatment (either outpatient or inpatient as directed by pretrial Services), a travel restriction, drug testing, no contact with codefendants and witnesses, among others.[1] The magistrate court found that the government had not satisfied its burden of proving that Mr. Kazakevich was a serious risk of flight and concluded that it was not proper under the law to base a finding of dangerousness on the allegations of the case alone. The court commented that the government's dangerousness argument based on the conclusion that the defendant has committed the crime of selling multiple guns without a license is contrary to the

---

[1] 1. Defendant must submit to supervision by Pretrial Services and must report immediately upon release and thereafter as directed to Pretrial Services.
2. Defendant must surrender all passports and other travel documents to Pretrial Services and must not apply for other passports or travel documents.
3. Defendant must not possess any firearm, destructive device, or dangerous weapon.
4. Defendant must not use alcohol and must not use or possess any narcotic or other controlled substance without legal prescription.
5. Defendant must submit to drug and/or alcohol testing as directed by Pretrial Services.
6. Defendant must participate in substance abuse treatment, on an outpatient or residential basis, as directed by Pretrial Services.
7. Defendant must have no contact, directly or indirectly, with any co-defendant outside or the presence of counsel.
8. Defendant must not change residence or telephone number without prior approval of Pretrial Services.
9. Defendant must not travel outside of The Northern District of California

2

law. The government asked for a 24-hour stay of the release order to appeal the ruling to the duty district judge, which the court granted. Later in the day, the United States filed what it has termed "United States' Appeal of Order of Release" and a separately filed Motion to Extend the Stay of the Release Order. *See* Dkts. 18 and 19. This Court granted the government's motion to extend the stay of the release order pending resolution of the appeal. *See* Dkt. 20

## LEGAL ARGUMENT

**I.    The Court Should Reconsider its Stay of the Release Order and Mr. Kazakevich Released on Bond During the Resolution of the Government's Appeal.**

The government requested a stay from the district court, which did not cite any legal authority for the proposition that a stay is appropriate. The duty district court Judge Trina Thompson granted the request (*see* Dkt. 20) and scheduled the hearing for Monday September 29, 2025 at 10:00 am. Mr. Kazakevich respectfully asks this Court to reconsider its stay of the release. Dkt. 18 at 1; *See, e.g., United States v. Martinez Santoyo*, 2022 WL 16856256 (E.D. Cal. November 10, 2022) (denying the government's request for a stay of a release order); *United States v. Brugnoli-Baskin*, 2022 WL 14664742 (W.D. Wash. October 24, 2022) (court reconsidered its grant of a government-requested stay because conditions had appropriately been set to avoid risk to the community while the court considered the government's appeal of the release order).

The magistrate court heard oral argument, considered a detailed written motion for detention from the United States and ordered Mr. Kazakevich released in accordance with the recommendation of U.S. Pretrial Services of a $15,000 bond with a surety who appeared before the magistrate court, and numerous special conditions including pretrial supervision, a travel restriction, and drug testing and treatment. The government disagrees with that order, but its disagreement does not provide a basis to stay the order in the interim. The government did not

cite any law in support of its request, relying only on the fact that the magistrate already stayed it temporarily as a basis to further detain Mr. Kazakevich. *See* Dkt. 18 at 1; 2. The argument for a stay is that staying the release order "would preserve the *status quo*", which is not entirely correct: Mr. Kazakevich was ordered released on September 25, 20225. Dkt. 18 at 2. Staying the order does not preserve that *status quo*. It preserves his incarceration.

In fact, this Court has the ability to hear this matter, with certainty, after Mr. Kazakevich is released, and given that there was no evidence offered, let alone any finding that Mr. Kazakevich poses a serious risk of flight, there is no reason to think he would fail to appear for that hearing. Mr. Kazakevich does not have a history of failures to appear and no recent criminal history that would suggest he is not amenable to supervision by Pretrial Services while the government's appeal is pending. The government has failed to show why Mr. Kazakevich must remain in custody during the pendency of its appeal.

The traditional test for a stay is a consideration of four factors: 1) whether the applicant has made a strong showing that he is likely to succeed on the merits; 2) whether the applicant will be irreparably injured absent a stay; 3) whether the issuance of the stay will substantially injure the other parties interested in the proceedings; and 4) where the public interest lies. *See, e.g., Nken v. Holder*, 556 U.S. 418, 434 (2009). The defense cited this standard to the government, via email, and the government's papers do not include any analysis of the stay factors other than to reference its concurrently filed appeal. There is no legal basis to grant the stay request (or to extend it) here. First, the government has not cited any authority that there is a strong showing they will succeed on the merits. Second, there is no harm to the government that will be avoided by keeping Mr. Kazakevich in custody pending this Court's resolution of the appeal. Third, Mr. Kazakevich, in contrast, will be the party that suffers injury if he remains in

custody when there is a release order in place: he has never been convicted of a violent crime, and, as described at the hearing before the magistrate court and in the Pretrial Services report, he has not had any recent criminal convictions since his last successful completion of a two year probation term imposed in 2019. Fourth, the public interest lies in favor of Mr. Kazakevich's release, as evidenced by the Pretrial Services Office's recommendation, following government briefing and a hearing before the magistrate court where the court directly addressed both the defendant and the surety before setting all of the numerous bond conditions recommended by Pretrial Services.

The government wants to revoke[2] the release order. Mr. Kazakevich can be present for those proceedings on bond. Put another way: when the defense moves to revoke a detention order, the defense does not also ask for a "stay" of that detention order, because there is no basis to do so.

The district court in *United States v. Hudspeth* recognized this logic in the context of a motion to review a release order in a criminal case, noting:

> The court appreciates that the requirement for a motion to be filed when the Government seeks review of a Magistrate Judge's release order may mean that an accused will be released pending a resolution of the Government's request for review. Such an outcome does not warrant disregarding the plain requirements of the governing law, however. In this regard, it is useful to consider that it has never been questioned that in order for a defendant to have a District Judge review a Magistrate Judge's pretrial detention order he must file a written motion. Nor has there been any question of the appropriateness of the accused remaining detained until there is a resolution of the defendant's motion. This court is unaware of any legal principle or logic that accords the Government's position regarding whether a defendant should be released pending trial a standing superior to that of the defendant such that the Government's position, as a matter of course, is effectively adopted—albeit temporarily—even after a judicial officer has ruled otherwise.

143 Supp. 2d 32, 35 (D.D.C. 2001).

---

[2] Although captioned an "appeal", the government's request is procedurally a motion to revoke the release order of the magistrate court. Any review of the magistrate order must be undertaken promptly. *See* 18 U.S.C. 3145(b)

5

## II. Opposition to Motion to Revoke Detention Order

### A. Legal Standards.

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Any doubts regarding the propriety of pretrial release are to be resolved in favor of the defendant. *See United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990).

The Bail Reform Act ("BRA") created a two-step process to determine whether pretrial detention is appropriate. At step one, the government must demonstrate, as a threshold matter, that it is entitled to seek pretrial detention under 18 U.S.C. § 3142(f). This is not a presumption case. If the government establishes that a pretrial detention hearing is warranted under subsection (f)(2)(A), as it did here, it must then, at step two, demonstrate that there is "no condition or combination of conditions [that] will reasonably assure the appearance of the person as required and the safety of any other person and the community" pursuant to 18 U.S.C. § 3142(e). In making that determination, courts are instructed to consider the following factors, which are enumerated in 18 U.S.C. § 3142(g):

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history

relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and,

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and,

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

**B. The Government Has not Satisfied its Burden of Proving by Clear and Convincing Evidence that Vadim Kazakevich is a Danger to any Person or the Community.**

Vadim Kazakevich does not pose a danger to the community or to any person, and certainly not by clear and convincing evidence – unless one presumes him guilty of the charges. At the detention hearing before the magistrate court on September 25, 2025, the government argued dangerousness based upon the factual allegations in the Complaint alone. The moving papers before this Court likewise contain no evidence as to danger to the community other than the conduct alleged in the Complaint itself. *See United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir 1985) ("[I]f the court impermissibly makes a preliminary determination of guilt, the refusal to grant release could become in substance a matter of punishment."). The magistrate court correctly found that the government had failed to meet its high burden of proving danger by clear and convincing evidence given that the weight of the evidence is the least important factor in the detention analysis. While it is often said that "the weight of the evidence is 'the least important of the various factors,' this is only true if the weight of the evidence is used to buttress a decision to *detain* the defendant." *United States v. Chen*, 820 F. Supp. at 1207 (quoting *Motamedi*, 767 F.2d at 1408) (emphasis added). Here, the magistrate court imposed numerous

7

conditions of supervision, including drug treatment and testing, to ensure the safety of the community by addressing Mr. Kazakevich's admitted addiction. These conditions are more than sufficient to "reasonably assure" the safety of the community. 18 U.S.C. § 3142(e). The law is well established that "[p]retrial release should be denied only in rare circumstances, and any doubt about the propriety of release should be resolved in the defendant's favor." *Motamedi*, 767 F.2d at 1405. The Court should uphold the magistrate court's order of release.

### C. The Government Presented No Evidence to Support its Claim of Serious Risk of Flight.

Regarding flight risk, the government speculates that it is possible that the houseboat Mr. Kazakevich has lived in for the past three years in the Oakland Marina is operable. In fact, it is not. It has no engine.[3] The government's speculation about the boat is not a basis for a finding of "serious risk of flight" and those arguments were rejected out of hand by the magistrate court. Importantly, Pretrial Services has recommended, and the magistrate court imposed, conditions that could ameliorate any small risk of nonappearance that may exist. "On a motion for pretrial detention, the government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk." *United States v. Santos- Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015). What appears to underlie the government's argument regarding flight risk is the fact that because Mr. Kazakevich is a foreigner, (despite his having lived here since 1989 with no foreign travel whatsoever) with a houseboat that *might* be operable, he is likely to flee the jurisdiction. The government's argument ignores the fact that Mr. Kazakevich has no means to flee, and that he is indigent. He does not travel internationally and he has no passport of any kind. Importantly,

---

[3] Even if the boat were operable, the government makes no argument as to how the existence of this houseboat increases Mr. Kazakevich's risk of flight. By this same logic, any defendant with a car should be detained for he could drive to Mexico. It is a half-hearted argument that was rejected by the magistrate court.

8

the argument ignores his incredibly strong family ties here in the Bay Area, which consist of his mother, father, two sisters, a brother and close family friends (one of whom attended the detention hearing to show her support). Strong family ties are a factor in favor of release and "ties to community" means both community of arrest and community where defendant normally resides. *U.S. v. Townsend*, 897 F.2d 989 (9th Cir. 1990).

The government relies on old criminal history records to suggest that Mr. Kazakevich has given different names to the police in his past and has been convicted of theft offenses, which are crimes of dishonesty. Dkt. 19 at 7. Absent from the government's analysis is the fact that, as Pretrial Services noted in its report, his past criminal behavior is, for the most part, dated, and does not include failures to appear in court. It also ignores the fact that Mr. Kazakevich successfully completed his last term of probation, imposed in 2019 and has a long work history. And despite the fact that his brother is of limited means as well, he came to San Francisco to attend court and volunteered to be a surety (and be questioned by the magistrate judge). He has put his trust in his brother and is willing to risk his own financial security to provide assurances to the Court. This fact alone reduces any potential risk of nonappearance.

Any modest risk of flight – which arguably exists in every single criminal case – is ameliorated by the conditions the magistrate court set here. The burden on the government is to show **serious** risk of flight *which cannot be ameliorated by conditions*. The magistrate court ordered drug testing and treatment, no travel, no weapons, Pretrial supervision, among others. Drug treatment that Mr. Kazakevich openly and honestly admitted he needs will address the underlying behaviors that have caused Mr. Kazakevich many problems in his life and will more than address any risk of flight here.

The government somewhat misleadingly characterizes the charges as "extremely serious" and cites to the statutory maximum penalties in support of its claim that Mr. Kazakevich is a flight risk (5 years for selling guns without a license, 18 USC 922(a)(1) and 15 years for being an ex-felon in possession of a firearm, 18 USC 922(g)(1)). First, the government is well aware that individuals in this district who face 20 year statutory maximum penalties, and even life in prison (e.g., RICO), are often released on bond with appropriately stringent conditions in accordance with the directives of the Bail Reform Act and pertinent case law. Numerous individuals charged with 18 U.S.C. 922(g) have been placed in the Court's rehabilitative programs. In fact, Mr. Kazakevich would be an excellent candidate for CAP. He suffers from untreated addiction and genuinely wants help and change. Such a program would further reduce his prison exposure.

The government's hyperbole aside, Mr. Kazakevich's sentencing exposure is far less than the statutory maximum. Mr. Kazakevich is estimated[4] to be in Criminal History Category III with an adjusted offense level after a plea of 25, which produces a range of 57-71, *before* any consideration of Mr. Kazakevich's personal characteristics, which could support a downward variance. There is no mandatory minimum, and this is not a presumption case. If Congress had wanted to create a rebuttable presumption in gun cases, it surely would have. If Congress wanted to treat selling unlicensed guns as an "extremely serious" and violent felony, it would have and the statutory maximum would be more than five years. These are not the sorts of sentences that trigger any automatic risk of flight (or presumption of danger for that matter). The government's argument is tantamount to claiming that every defendant who faces prison time is a "serious"

---

[4] This calculation is a rough calculation from AUSA Eli Cohen, communicated to undersigned defense counsel and is not binding or final. Of course, the United States Probation Office makes final calculations based upon the discovery and facts of the case. This estimate is provided here merely for purposes of demonstrating that the government is aware that Mr. Kazakevich faces far less than the statutory maximum. The sentencing guidelines for selling unlicensed weapons are lower than those for 922(g).

flight risk. That argument would justify detaining nearly every defendant who appears before this Court. That is contrary to Ninth Circuit law and the magistrate court was correct in its conclusion that the government had not come anywhere even close to satisfying its burden of demonstrating risk of flight such that *no* combination of conditions could reduce that risk.

## CONCLUSION

Appropriate conditions of release were set in this case. And the Ninth Circuit has been very clear: *defendants must only be detained where no combination of conditions can reasonably assure the safety of the community and the defendant's future appearance.* They need not guarantee it. If this Court were concerned in any way about the standard conditions and nine special conditions set by the magistrate court, Mr. Kazakevich could certainly be ordered to adhere to additional conditions that such as an evening curfew. But on these facts, especially given that hundreds of individuals in this district are released on bond (many of which are agreed to by the United States) for individuals who are charged with far more serious crimes than those charged in this case, including child pornography crimes, the government's decision to appeal the magistrate order of release in this particular case has been puzzling and unfortunate given that it has resulted in his prolonged detention after both Pretrial Services and a highly experienced magistrate judge found Mr. Kazakevich worthy of release. The Bail Reform Act requires release unless no combination of conditions can reasonably assure his appearance and the safety of the community. 18 USC § 3142.

Finally, there is no basis for a stay, nor has the government made an effective argument in support of why a stay is appropriate. Mr. Kazakevich respectfully asks this Court to revoke the stay order it has issued and allow Mr. Kazakevich to be released pending resolution of the government's appeal. Mr. Kazakevich's brother and surety is ready and willing to pick him up

11

from the Elmwood County jail and take him home so that he can begin receiving the treatment that he desperately wants and has openly and honestly admitted to Pretrial Services he needs.

Dated: September 26, 2025.   Respectfully submitted,

*K. Alexandra McClure*

K. ALEXANDRA McCLURE
Attorney for Vadim Kazakevich

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28